# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VALLEY FIRE PROTECTION SYSTEMS, LLC, | )<br>)<br>) |
| Plaintiff, | ) |
| | ) No. 14 C 7839 |
| v. | ) |
| | ) Judge Jorge Alonso |
| THE PHOENIX INSURANCE COMPANY, | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In this diversity case, plaintiff, Valley Fire Protection Systems, LLC ("VFPS"), claims that defendant, Phoenix Insurance Company ("Phoenix"), failed to defend VFPS in an underlying lawsuit, breaching its contractual duty to defend and violating Illinois's bad faith statute, 215 Ill. Comp. Stat. 5/155. Phoenix has filed a motion for judgment on the pleadings, contending that it had no duty to defend because the underlying claim was not even potentially covered. VFPS has filed a cross-motion for judgment on the pleadings. For the reasons set forth below, Phoenix's motion is granted and VFPS's motion is denied.

## Facts

This case stems from a dispute over whether VFPS's insurance policy with Phoenix covers the claims made against VFPS in a lawsuit filed in Kane County, Illinois. RP2 Limited Partnership ("RP2") alleged in *RP2 Limited Partnership v. Valley Fire Protection Systems, LLC*, 2012 L 576, that VFPS breached its contractual obligations by installing a defective sprinkler fire protection system in a building owned by RP2.

In 2007, RP2 engaged Pancor Construction & Development LLC ("Pancor"), a general contractor, to construct an office building in Elgin, Illinois. (RP2 Compl. ¶ 4.) VFPS entered

1

into a subcontract agreement with Pancor to design and install the building's sprinkler fire protection system. (*Id.* ¶ 5.) The agreement required VFPS to perform work meeting certain professional and legal standards (*id.* ¶¶ 8-14), and to indemnify Pancor for any claims asserted against Pancor arising out of VFPS's work (*id.* ¶ 16).

In August 2010, nearly three years after it was installed, the sprinkler system began to leak. (*Id.* ¶ 20.) Engineering firms determined that the pipe joints were corroded, probably because they were inadequately sealed during the installation process, and would have to be replaced. (*Id.* ¶¶ 24-26.) RP2, as Pancor's assignee, brought suit against VFPS for the cost of repairing and replacing the defective sprinkler system.

Phoenix had issued a commercial general liability ("CGL") insurance policy to VFPS, which became effective on July 1, 2010. (VFPS Compl. ¶ 3.) After RP2 filed its complaint against VFPS on October 26, 2012, VFPS tendered its defense to Phoenix. (*Id.* ¶¶ 4-5.) On November 26, 2012, Phoenix denied coverage and refused to defend VFPS. (*Id.* ¶ 7.) VFPS asked Phoenix to reconsider, but Phoenix reiterated its position that the policy did not cover the RP2 suit. (*Id.* ¶¶ 8-10.)

VFPS retained counsel, and on May 15, 2014, it settled the RP2 suit on its own. (*Id.* ¶¶ 11, 13.) VFPS subsequently brought this action against Phoenix, claiming that Phoenix breached its duty to defend in bad faith and is now estopped from raising coverage defenses. (*Id.* ¶¶ 7, 12, 16.) VFPS seeks to recover its defense costs, indemnity for the sums it had paid to settle the RP2 suit, and statutory damages for bad faith. (*Id.* ¶¶ 14, 16.) The action was originally filed in state court in Kane County, but Phoenix removed the suit to this Court. (Notice of Removal at 1-2.)

**Discussion**

Phoenix has moved for judgment on the pleadings, contending that it did not breach the duty to defend because the allegations of the RP2 suit did not state a claim that was even potentially covered under its policy.

Rule 12(c) permits a party to move for judgment on the pleadings, which consist of the "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Hayes v. City of Chi.*, 670 F.3d 810, 813 (7th Cir. 2012). Accordingly, in considering a 12(c) motion, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). The motion is properly granted only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id.* (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989)).

VFPS's insurance policy gave Phoenix the "right and duty to defend the insured against any suit seeking damages" that "the insured becomes legally obligated to pay because of . . . 'property damage' to which this insurance applies," provided the property damage is caused by an "occurrence." (Compl. Ex. A, Coverage Form at 1.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 14.) Illinois law—which both parties cite as controlling—has further defined the word "accident," in the context of an occurrence-based insurance policy, as an "unforeseen occurrence, usually of an untoward or disastrous character or an undesigned, sudden or

3

unexpected event of an inflictive or unfortunate character." *Westfield Nat'l Ins. Co. v. Cont'l Cmty. Bank & Trust Co.*, 804 N.E.2d 601, 605 (Ill. App. Ct. 2003). "Property damage" is defined as either "(a) physical injury to tangible property, including all resulting loss of use of that property," or "(b) loss of use of tangible property that is not physically injured." (*Id.* at 15.)

The duty to defend arises when the underlying complaint makes allegations that "fall within or potentially within the coverage provisions of the policy." *Viking Constr. Mgmt., Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 6 (Ill. App. Ct. 2005) (citing *Lyons v. State Farm Fire & Cas. Co.*, 811 N.E.2d 718, 722 (Ill. App. Ct. 2004)). The underlying complaint is to be "liberally construed in favor of the insured, and doubts and ambiguities are to be construed in favor of the insured." *Lyons*, 811 N.E.2d at 722. Thus, Phoenix had a duty to defend VFPS in the underlying lawsuit only if RP2's complaint could be construed, resolving any doubts and ambiguities in favor of VFPS, to allege an injury that fits the definition of "property damage" caused by an "occurrence."

Under Illinois law, it is well-established that a construction defect is not an "occurrence" or "accident"; rather, it is the natural and ordinary consequence of poor workmanship. *See Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 689-90 (7th Cir. 2008) (citing cases). CGL policies "are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 503 (2001) (citing *Qualls v. Country Mut. Ins. Co.*, 462 N.E.2d 1288, 1291 (Ill. App. Ct. 1984)). Illinois courts hold that "there is no occurrence when a subcontractor's defective workmanship necessitates removing and repairing work," *Milwaukee Mut. Ins. Co. v. J.P. Larsen, Inc.*, 956 N.E.2d 524, 531 (Ill. App. Ct. 2011) (quoting *Viking*

4

*Constr.*, 831 N.E. 2d at 6), but when the defective workmanship causes damage to something *other* than the insured's work, there is an occurrence, *id.* (citing *CMK Dev. Corp. v. West Bend Mut. Ins. Co.*, 917 N.E.2d 1155, 1164 (Ill. App. Ct. 2009) and *Stoneridge Dev. Co. v. Essex Ins. Co.*, 888 N.E.2d 633, 653 (Ill. App. Ct. 2008)). Thus, faulty workmanship resulting in cracks in the load-bearing elements of a home is not an occurrence causing covered property damage, *Stoneridge*, 888 N.E.2d at 654, but faulty workmanship resulting in leaks that cause water damage to the homeowner's furniture, clothing and antiques *is* an occurrence causing covered property damage, *see Pekin Ins. Co. v. Richard Marker Assocs., Inc.*, 682 N.E.2d 362, 365-66 (Ill. App. Ct. 1997).

In this case, the RP2 complaint on its face alleged no water damage. The complaint was directed to the repair and replacement of the defective sprinkler system; it did not seek recovery for damage to other parts of the building or other property in the building caused by water leaking from VFPS's sprinkler system, nor did it expressly allege that any such damage occurred.

According to VFPS, however, it would be "naïve" to read the complaint as alleging that a sprinkler system substantially and chronically leaked in a functioning office building without causing water damage. (VFPS Resp. & Cross-Mot. at 8-9.) VFPS argues that the RP2 complaint did allege that the leaks resulted in damage to the surrounding building, even if only implicitly. Specifically, VFPS points to Paragraph 31 of the RP2 complaint, which alleges that "*[a]part from the potential property damage*, RP2 will have to make repairs to the Sprinkler System to correct the Defect with damages estimated in excess of $100,000." According to VFPS, this paragraph alleges property damage "apart from" the damage to the sprinkler system, which must be damage to the rest of the property.

5

But a complaint does not give rise to a duty to defend merely because it does not "logically foreclose the theoretical possibility" of a potentially covered claim. *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 811-12 (7th Cir. 2010). If the complaint alleges no specific facts within or potentially within coverage, there is no duty to defend; "it is the actual complaint, not some hypothetical version, that must be considered." *Del Monte Fresh Produce, N.A., Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 646 (7th Cir. 2007) (citing *Conn. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 350-51 (7th Cir. 2003)). "Implied claims that are not specifically alleged can be ignored." *Microplastics*, 622 F.3d at 812 (citing *Del Monte*, 500 F.3d at 644).

RP2 made no specific allegations of any damage to any property other than the sprinkler system itself. The allegations of Paragraph 31 are no exception. In that paragraph, RP2 mentioned only some "potential property damage" "apart from" the repair of the sprinkler system. The complaint does not contain sufficient facts to allow the Court to infer that this vague allegation refers to potentially covered property damage. The "potential property damage" RP2 mentioned may as easily refer, for example, not to water damage caused by the leaking sprinkler system but to damage to the building that might be associated with repairing or replacing the sprinkler system, such as tearing out walls or ceilings to reach the pipes behind them.

The Court is mindful of its obligation to construe the complaint liberally in favor of the insured, but it may not "speculate about factual scenarios that are absent from the claim itself," *Microplastics*, 622 F.3d at 814, nor may it "read into the complaint facts that are not there," *Lagestee-Mulder, Inc. v. Consolidated Ins. Co.*, 682 F.3d 1054, 1058-59 (7th Cir. 2012) (citing *Pekin Ins. Co. v. Roszak/ADC, LLC*, 931 N.E.2d 799, 806 (Ill. App. Ct. 2010)). The allegations

of Paragraph 31 and the broader complaint are "fully consistent with losses suffered through contract failure," which are not covered. *Microplastics*, 622 F.3d at 814. There is simply no cognizable allegation of damage beyond the repair and replacement of the sprinkler system, so there is no duty to defend and no coverage.

VFPS cites *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926 (Ill. 1991), but this case provides no support for its position. As Phoenix explains, *Wilkin* is distinguishable because the underlying complaints in *Wilkin* alleged that, as buildings built with asbestos-containing materials deteriorated or if the asbestos-containing materials were disturbed, asbestos fibers were released into the air and spread, causing "property damage" by contaminating the entire building. *Id.* at 931. As explained above, in this case there is no similar factual allegation that any part of the building other than the sprinkler system was damaged.

VFPS claims that Phoenix is estopped to deny coverage because it breached the duty to defend; however, because the Court has determined that Phoenix never had a duty to defend, this claim must fail. Similarly, VFPS's statutory bad faith claim must fail because the Court has determined that there was no duty to defend and no coverage.

## **CONCLUSION**

For the reasons set forth above, the Court grants defendant's motion for judgment on the pleadings [9] and denies plaintiff's cross-motion for judgment on the pleadings [13]. This case is terminated. **SO ORDERED.**

**ENTERED: March 12, 2015**

**HON. JORGE ALONSO**
**United States District Judge**